

**FILED**

**DEC 29 2011**

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | * | |
| INTERPRETER SERVICES, INC., | * | CIV. 10-4007 |
| | * | |
| Plaintiff, | * | |
| | * | ORDER |
| v. | * | |
| | * | |
| BTB TECHNOLOGIES, INC., and | * | |
| THOMAS M. DAFNOS, Individually, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending are: Motion for Sanctions (Doc. 39) and Motion for Leave to Submit Additional Affidavit. (Doc. 66).[1]

## BACKGROUND

At the heart of this motion are three pages of 1,141 Bates stamped pages[2] produced as BTB's Rule 26 Initial Disclosures in September, 2010. The three pages are photocopies of printed emails. A dispute arose in March 2011 when it became apparent there are two dramatically different versions of these three pages. The parties disagreed about which version of the three pages was the genuine version. As a result, BTB moved for sanctions asserting that Interpreter Services knowingly introduced the fraudulent version into the record. Two evidentiary hearings were held— the first was on Tuesday, November 1, 2011 and the second was on Thursday, December 8, 2011.

## FACTS

At the conclusion of the first evidentiary hearing both parties agreed the version marked as

---

[1]The Motion for Leave to Submit Additional Affidavit (Doc. 66) is unopposed and is GRANTED. Also pending is a Motion to Amend the Complaint (Doc. 57). That motion is not addressed in this Order.

[2]BTB 0434, 0435 and 0436.

1

EX 1 is the contrived version of BTB 0434, 0435 and 0436 and EX 101 is the genuine version (the documents which were actually delivered by BTB as their Rule 26 Initial Disclosures on September 30, 2010).[3]  Neither party presented conclusive evidence to identify the person or persons who fabricated the fake emails or to explain how the fake emails came into the possession of Kasey Entwisle or her lawyer.  The following facts come from the testimony presented during both evidentiary hearings, together the documents and exhibits on file:[4]

On September 30, 2010, April Crandall, legal assistant to BTB's counsel Jeff Bratkiewicz, delivered to the office of Robert Christenson, counsel for Interpreter Services, BTB's Rule 26 Initial Disclosures.  Crandall delivered 1,141 pages of Bates stamped documents and a CD containing spreadsheets.[5]  Crandall helped Bratkiewicz prepare the Rule 26 Initial Disclosures and scanned all

---

[3]The authentic version of the emails (EX 101) is an exchange between Thomas Dafnos and Kasey Entwisle during November and December, 2007.  The subject matter is innocuous.

The fabricated version of the emails (EX 1) purports to be an exchange between Thomas Dafnos and Wesley Waite, Sr. and is dated March 18, 2010.  The subject matter is a plan between Dafnos, Waite and others to ruin Entwisle, Stewart, a person referred to as "Stan" and businesses referred to as Lifelinks and ACE.  The plan includes destroying records and finding a way to cause Entwisle to question Stewart's integrity.

For the convenience of the reader, copies of both the fake emails (EX 1) and the authentic emails (EX 101) are attached to this opinion

In addition to the parties' agreement, a review of EX 1 supports the conclusion that the emails are fake.  For example, the text is misaligned on the page.  The Bates numbers are not uniformly placed as they would be by a computer generated program, and in one instance the number is partially obscured.  In one message, the subject line says "I Need....." but in the reply to the same message it says "I need...."  In one of the messages, Wes Waite, Sr.'s name is missspelled as "Wes Waites, Sr.  Finally, there is an obvious "cut and paste" line across the bottom of the fake BTB 0435.

[4]Citation to the transcript from the November 1 evidentiary hearing will be by "TR1" followed by the appropriate page number.  Citation to the transcript from the December 8 evidentiary hearing will be by "TR2" followed by the appropriate page number.

[5]EX 103 ¶ 19.

of the disclosed documents into PDF format.[6] Crandall used a computer program to insert the Bates numbers on the scanned documents.[7] There was only one version of BTB's initial disclosures and it was scanned by Crandall on September 28, 2010.[8]

Kasey Entwisle is the owner and sole shareholder of Interpreter Services, Inc. Interpreter Services and BTB Technologies contracted with each other in 2008, but disputes about payment followed. Interpreter Services sued BTB in state court in South Dakota.[9] This federal case was simultaneously filed. The state case was settled before trial, but the settlement did not require dismissal of the federal case.

Lamar Stewart is Entwisle's former business associate. Stewart helped Entwisle form Affluent Solutions. Stewart was employed by Affluent Solutions for a time ending approximately in June 2010.[10] Entwisle considers Stewart a consultant and trusted friend.[11] Stewart did not come to the first evidentiary hearing. Instead, Christenson offered Stewart's sworn statement which was

---

[6]*Id.* ¶ 11.

[7]*Id.*, ¶ 12.

[8]*Id.* ¶ 14.
Bratkiewicz made supplemental Rule 26 Initial Disclosures on March 18, 2011, including a CD version of the original Rule 26 Initial Disclosures. *See* Doc. 42, ¶ 30. A copy of the CD was filed along with Doc. 42 as EX F. Although Bratkiewicz's Affidavit explains that the "properties" information for the PDF files contained on the CD verifies that all the Bates stamped pages were created on September 28, 2010, the CD which was filed with the Clerk's office as EX F to Doc. 42 indicates it was created on May 11, 2011, shortly before Doc. 42 was filed. During the evidentiary hearing, Bratkiewicz offered to allow his office computer to be forensically examined to verify that all 1,141 Bates stamped documents were scanned on September 28, 2010. In light of Christenson's concession that EX 101 represents the version of the emails that was delivered to his office on September 30, 2010, the forensic examination is not necessary.

[9]*Interpreter Services, Inc. v. BTB Technologies, Inc.* Civ. No. 10-711, Minnehaha County, Second Judicial Circuit, South Dakota.

[10]TR1 26.

[11]EX 5, ¶ 21.

3

taken in Christenson's office the previous week.[12]  Bratkiewicz was not invited to the sworn statement, so BTB did not cross-examine Stewart at the taking of the sworn statement.  BTB objected to receiving the statement as evidence, so the sworn statement was not received.  Likewise, Stewart's Affidavit was offered, but not received into evidence.[13]

Christenson represented that Stewart was not at the first hearing because: (1) Stewart would be fired from his job if he testified; (2) Stewart was out of town; and (3) Stewart was ill.[14]  A court initiated subpoena was then served on Stewart to appear and testify at a second evidentiary hearing on December 8, 2011.  Stewart emailed the court's office shortly after the first evidentiary hearing to express dismay about Christenson's explanations for Stewart's absence from the first evidentiary hearing.[15]  Stewart wrote that he did not tell  anyone he would be fired if he testified at the first hearing. Stewart attached a copy of his email to Christenson chastising Christenson for "saving your [own] ass but you have no problem frying my ass so to speak."[16]  At the beginning of the second evidentiary hearing, the Plaintiff again offered Stewart's affidavit and sworn statement to serve as Stewart's direct examination by Plaintiffs.[17]  This time BTB did not object, so both of the exhibits were received as Stewart's testimony on direct examination.  Counsel for BTB cross-examined Stewart and the court also questioned Stewart.

After BTB's Rule 26 Initial Disclosures were delivered to Christenson's office on or about September 30, 2010, Stewart, Christenson and Entwisle met on October 14 to review the documents

---

[12]EX 2.

[13]EX 6.

[14]TR1 7.

[15]EX 104.

[16]EX 104.

[17] Re-marked as EX 8 and re-marked as EX 9.

in a "cursory" fashion.[18]  By the time Stewart arrived at the meeting Entwisle was looking through the documents and had marked some with Post-it notes.[19]  Christenson asked Stewart about the documents which pertained to financial matters while Entwisle reviewed other documents.[20]  The meeting lasted about an hour and a half or two hours.[21]  The next day, Christenson called Stewart and asked him to come retrieve BTB's documents to take them home for a closer review so Stewart could render an opinion about what needed to be done.[22]  On or about October 15, 2010, Stewart and his son drove to Christenson's office; Christenson met them on the curb and gave them the box full of documents.  Stewart transported the documents home and placed them in his locked office where nobody else had access to them.[23]

Many of the documents that Entwisle had marked with Post-it notes were Bates stamped emails, but the emails that bore Bates stamp numbers 0434, 0435 and 0436 were not marked with

---

[18]Stewart testified that he received a call from Christenson on the day the documents were delivered. Stewart went to Christenson's office that day (September 30 or October 1st) but nobody examined any of the documents that day. It is unclear why Stewart went to Christenson's office the day the documents were delivered but Stewart insists he did so, and that he merely acknowledged the documents had been delivered. Stewart's recollection about when the next meeting occured is not entirely clear. Stewart believes the "cursory review" meeting occurred only a few days after the documents were delivered (EX 9, p. 15), but also testified the "cursory review" occurred on or about October 14th. EX 8, ¶ 4. Stewart and Entwisle agree, however, about what occurred during the "cursory review" meeting at Christenson's office.

[19]The documents which were produced in the Defendants' Rule 26 Initial Disclosures were grouped and bates stamped by category. The pages in the email category were bates stamped numbers 0434 through 1,141. The emails which bear bates stamp numbers 0434, 0435 and 0436, therefore, are the first three of several hundred emails which were produced in the Defendants' Rule 26 Initial Disclosures. *See* Doc. 42-1 p. 5 of 7.

[20]EX 9, p. 16.

[21]EX 9, p. 16, TR2 34.

[22]EX 9, p. 17-18.

[23]TR2 34-36, 67. Stewart testified the box full of documents sat in his vehicle for a few days before he placed them in his office. EX 9, p. 18.

Post-it notes. Stewart testified document numbers 0434, 0435 and 0436 were not marked with Post-it notes, and Entwisle, the one who affixed Post-it notes, testified that she did not notice those emails during the October 14 meeting in Christenson's office.[24]

Entwisle explained that Stewart texted her "a few days" after the joint meeting in Christenson's office, asking if she had seen the emails.[25] Attached to her affidavit is a printed email from Entwisle to Christenson dated October 20, 2010, indicating Stewart wished to meet again "ASAP."[26] Entwisle explained the October 20 email to Christenson was made at the time of and regarding Stewart's discovery of the emails which are now known to be fake. Stewart testified he found them among the pages of documents he had retrieved from Christenson's office and had taken home for further and closer review.[27] Christenson represented in open court that the fake emails were not produced in his office.[28] Entwisle claims she first saw the fake emails when Stewart brought them to her office on October 20, 2010.[29] She scanned them into PDF form and emailed them to Christenson.[30] Entwisle, Stewart and Christenson met again the next day, October 21, 2010, to discuss several issues including the emails.[31]

Bratkiewicz remained unaware that there existed two versions of BTB 0434, 0435 and 0436. Meanwhile, during the meeting between Stewart and Entwisle at Entwisle's office on October 20,

---

[24]TR1 27, TR2 65.

[25] TR1 26.

[26]EX 5, att. B.

[27]EX 9, p. 23.

[28]TR1 9.

[29]TR1 27.

[30]*Id.*

[31]TR2 44.

2010, Entwisle copied and scanned "every page" of BTB's Rule 26 Initial Disclosures.[32] Stewart explained that Entwisle made a complete copy of the Rule 26 Initial Disclosures, one each for Stewart, Entwisle and Christenson.[33] Stewart explained that he and Entwisle noted as they copied the documents that "a lot" of sequential bates stamped page numbers were missing.[34] They discussed this fact with Christenson.[35]

Stewart's daughter Lauren created a disc containing the copied Rule 26 Initial Disclosure documents and forwarded them to Stan Schoenbach in New York, New York. Schoenbach is the president of a business called Lifelinks.[36] Lifelinks is Stewart's current employer. Lifelinks is owned by Healinc.[37] Stewart is the Senior Vice President of Healinc.[38] Schoenbach, Lifelinks and Healinc are co-defendants in a lawsuit in New York in which Wesley Waite is the Plaintiff. *Waite v. Schoenbach, et. al.* 1:10-cv-03439-RMB (S.D.N.Y). Wesley Waite and Dafnos were business partners in the past[39] and are the purported sender and receiver of the fake version of the emails—

---

[32]EX 9 at p. 13-14, TR2 42.

[33]TR2 at 69.

[34]TR2 at 42-43.

[35]TR2  43.

[36]Doc. 42-7, p. 14.

[37]TR2  11.

[38]Doc. 42-11.
    Stewart's testimony about his relationship with Lifelinks/Healinc and Schoenbach was puzzling at best. He asserts he went to work for the company as a "consultant" or "independent contractor" in August, 2010 and became its COO four months later in December, 2010. TR2 10-11, 56. He persisted in his claim, however, that he was completely unaware of the pending New York lawsuit brought by Wes Waite against Shoenbach/Lifelinks/Healinc when Entwisle copied the Rule 26 Disclosures from this case and caused them to be forwarded to his boss (Schoenbach) in October, 2010. TR2 56. Instead, Stewart insisted all he knew was that Entwisle copied the documents and caused them to be forwarded to Schoenbach in an effort to settle Entwisle's own dispute with Schoenbach. TR2 57-58.

[39]Doc. 42-7, p. 24.

BTB 0434, 0435 and 0436. Schoenbach is also known as and referred to by Stewart in this case as Schoen.[40] BTB's Rule 26 Initial Disclosures were sent to Schoenbach in an effort to settle a dispute between Entwisle and Schoenbach/Healinc. In exchange for copies of the Rule 26 Initial Disclosure documents, Schoenbach agreed to allow Entwisle to run a South Dakota call center for him; he hired Entwisle's interpreters, and he paid her money owed for services rendered the previous year.[41]

In January, 2011, the fake emails surfaced during a mediation in the New York lawsuit. During the mediation a portion[42] of one of the fake emails was presented to Mr. Waite. Waite was informed the email had been produced by BTB in this litigation.[43] Waite explained during his deposition in this case that when opposing counsel showed the email to him and the presiding Magistrate Judge during the New York mediation, Waite did not give the email any legitimacy.[44] Waite's attorney objected to the use of the email during the mediation, and it was withdrawn. Neither Waite nor his attorney were allowed to keep a copy, and a copy was not entered into the record in the New York case.[45] After seeing the email, however, Mr. Waite agreed to settle his claim against Schoenbach, Lifelinks and Healinc for an amount much less than he originally demanded.

Thereafter, in March, 2011, Christenson for the first time brought the fake emails to the attention of Bratkiewicz.[46] Christenson at this time ostensibly believed the fake emails were genuine.

---

[40]See Doc. 42-7 p. 14, explaining that Schoenbach goes by both names.

[41]TR2 45-46.

[42]See Doc. 42-7, attached EX 4. Waite explained that only the portion above the line drawn on the first page of the Exhibit was shown to him during the mediation.

[43]Doc. 42-7, p.19.

[44]EX 42-7, p. 24.

[45]EX 42-7, p. 24, 33-34.

[46]Doc. 42-4, EX 102.

Christenson faxed copies of the fabricated emails to Bratkiewicz along with a letter outlining Christenson's intent to bring additional claims against Dafnos, either in this litigation or by starting a new lawsuit.[47] Bratkiewicz immediately disputed the authenticity of the fake emails, provided Christenson with copies of the authentic emails which had been produced as BTB 0434, 0435 and 0436, and demanded to know the origin of the fake documents which Christenson represented as BTB 0434, 0435 and 0436. Christenson responded by theorizing that Bratkiewicz or his staff "mistakenly placed the three (3) emails in the discovery you provided and are now scrabbling to correct the mistake . . ."[48]

As a solution to their disagreement about which version of BTB 0434, 0435 and 0436 was authentic Christenson proposed "I will agree to place your documents in the discovery material and take mine out. I will then submit my emails to you as supplemental discovery. That would solve our problem without further conflict."[49] Bratkiewicz proposed a face-to-face meeting to determine who had been given access to the original discovery documents after they were hand- delivered to Christenson's office and to pursue answers to other questions which might help resolve the dispute. In an effort to persuade Christenson that the fake emails had not been mistakenly produced by his office, Bratkiewicz also invited Christenson to Bratkiewicz's office to show Christenson the PDF version of the Rule 26 Initial Disclosures that were scanned onto Bratkiewicz's firm's computer network on September 28, 2010, a few days before they were printed and delivered to Christenson's office.[50]

On March 18, 2011, Bratkiewicz supplemented BTB's Rule 26 Initial Disclosures by adding a CD (attached as Exhibit B to the Supplemental Disclosure). The CD is Bratkiewicz's PDF copy of documents which had been delivered by Crandall to Christenson's office on September 30, 2010.

---

[47]EX 102.

[48]Doc. 42-4 p. 7 of 67.

[49]*Id.*

[50]Doc. 42-4, p. 8 of 67.

In the Supplemental Initial Disclosures, Bratkiewicz explained that

> Enclosed is a CD, which has been marked as Exhibit B, which contains a true and complete copy of documents BTB0001 through BTB 1141 that were produced to Plaintiff on September 30, 2010 as part of Defendants' Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1). These documents are contained on four separate Adobe.pdf files. Bates numbers were first added by Defendants' attorneys to the documents produced as part of Defendants' Initial Disclosures, on September 28, 2010, using a computer software program called Bates Platinum 9. Properties information for the Adobe.pdf files contained on Exhibit B reflects and confirms that these electronic files were all created on September 28, 2010. The documents served on the Plaintiff on September 30, 2010, as part of Defendants' Initial Disclosures, were printed directly from the Adobe.pdf files created on September 28, 2010, and which are contained on Exhibit B.[51]

None of the efforts to resolve the dispute about BTB 0434, 0435 and 0436 was successful. On March 31, 2011, the parties deposed Wesley Waite.[52] Waite denied sending or receiving the fake emails. Waite also denied that the events described in the fake emails ever occurred.[53] On April 1, 2011, Christenson served a Request for Admissions in which he requested BTB Technologies and Dafnos to admit the fake emails were authentic.[54] Dafnos denied the fake emails were genuine, denied he wrote or received the fake emails, denied the fake emails were among the documents produced as part of the BTB's Rule 26 Initial Disclosures, and denied the events described in the fake emails ever occurred.[55]

In a letter to Bratkiewicz dated April 11, 20211, Christenson acknowledged: (1) that Bratkiewicz denied the fake emails were among BTB's Rule 26 Initial Disclosures; and (2) that both Waite and Dafnos denied authoring the fake emails and (3) that if he (Christenson) wished to

---

[51]Doc. 42-6.

[52]Doc. 42-7.

[53]*Id.*

[54]Doc. 42-12.

[55] *Id.*

10

use the fake emails at trial, he would be required to lay the proper foundation.[56]  Nevertheless, on April 14, 2011, Christenson supplemented the Plaintiff's Rule 26 Initial Disclosures to add the fake emails to the record in this case.[57]  Bratkiewicz objected to Christenson's supplemental disclosures and requested appropriate action from Christenson.[58]  The fake emails were not removed from the record.  BTB's Motion for Sanctions followed.

## ANALYSIS

Defendants' Motion for Sanctions requests Court intervention pursuant to Rules 11, 26 and 37 of the Federal Rules of Civil Procedure and the Court's inherent constitutional authority.  The Defendants request sanctions including dismissal of the lawsuit with prejudice, an award of Defendants' costs and attorney's fees, and the imposition of a monetary fine or sanction against the Plaintiff.

### A.  The Standards for Imposing Sanctions

#### 1.      Rule 11 Sanctions

Fed. R. Civ. P. 11 provides in relevant part:

**(b) Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing the existing law or establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for investigation or discovery; and

(4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

---

[56]Doc. 42-4, p. 36.

[57]Doc. 42-14.

[58]Doc. 42, ¶ 48, Doc. 42-4, p. 37-41.

11

**(c) Sanctions.**

(1)     In general.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rue or is responsible for the violation.  Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(d)     Inapplicability to Discovery.** This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

Rule 11 requires the that the attorney who signed the pleading "conduct a reasonable inquiry of the legal and factual basis for [the] claim before filing."[59]   Whether the attorney's inquiry is reasonable may depend on whether he relied on the client for factual information, other counsel, or another member of the bar[60].  The fact dependent legal standard mandated by Rule 11 is an issue for the Court to decide.[61]    An award of attorney's fees in a Rule 11 case is designed to discourage baseless or frivolous motions. "[T]he Rule's primary purpose is not wholesale fee shifting but rather correction of litigation abuse."[62]   The Courts are encouraged to consider a wide range of alternative possible sanctions for Rule 11 violations; the sanction is appropriate when it is the "*minimum* that will serve to *adequately* deter the undesirable behavior." [63]   The language of Rule 11 incorporates judicial discretion to craft a sanction to fit the situation.  Sanctions other than an award of attorney's fees include publication, an order barring the offending attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, or ordering the offending attorney to circulate a copy of the opinion in which the pleadings were criticized.[64]   If a monetary sanction such as attorney's fees is awarded, the amount should be guided by equitable considerations.[65]  Considering

---

[59]*Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).

[60]  *Id.*

[61]*Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992).

[62]*Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3rd Cir. 1988)

[63]*Id.*(citation omitted, emphasis in original).

[64]*Id.*

[65]*Id.*

12

the potential severe and punitive nature of Rule 11 sanctions, a clear and convincing burden of proof is appropriate.[66]

### 2.    Fed. R. Civ. P. 26(g)

Fed. R. Civ. P. 26(g) provides in relevant part:

**(g) Signing Disclosures and Discovery Requests, Responses and Objections.**
(1)    ***Signature Required; Effect of Signature.*** Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response or objection must be signed by at least one attorney of record in the attorney's own name . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after reasonable inquiry:
(A) with respect to disclosure, it is complete and correct as of the time it is made; .

. .

\*\*\*\*

(3)    **Sanction for Improper Certification.** If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

"Unlike Rule 11 sanctions, which are awarded at a court's discretion, Rule 26(g) requires sanctions if a violation is found."[67]   The purpose of Rule 26(g) sanctions is "to deter abuse and compensate the opposing party for all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly."[68]   The mandatory nature of the Rule 26(g) sanctions is a deterrent to excessive discovery and evasion by imposing upon attorneys a certification requirement that requires each of them to "stop and think about the legitimacy" of the discovery

---

[66]*Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th cir. 1976) (a finding of fraud on the court, including fabrication of evidence, "must be supported by clear, unequivocal and convincing evidence.").

[67]*Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 550 (S.D. Ia. 2007).

[68]*Id.* (citations omitted).

documents upon which they affix their signatures.[69]  "The most obvious situation where sanctions are appropriate occurs where a party or its attorney submits a false discovery document."[70]

The pertinent inquiry pursuant to Rule 26(g) is whether the attorney made a reasonable inquiry before signing the discovery document. "Rule 26(g)(2) requires that every response to a discovery request bear the signature of the attorney, certifying to the best of his knowledge, information and belief, formed after reasonable inquiry that the response is (A) consistent with the Federal Rules of Civil Procedure . . . ; (B) not interposed for any improper purpose . . .; and (C) not unreasonable. The duty to make a reasonable inquiry is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. *See* Advisory Committee Notes to the 1983 amendments to Rule 26(g)."[71]  Rule 26(a)(1) disclosure requirements should be applied with common sense.   "The litigants should not indulge in gamesmanship with respect to the disclosure obligations."[72]  Sanctions are appropriate under Rule 26(g) when the parties' conduct has "clearly added unnecessary delay and expense to the litigation."[73]

### 3.    28 U.S.C. § 1927

The Defendants did not request the imposition of sanctions under 28 U.S.C. §1927, but it provides another source for their imposition if the Court determines attorney misconduct has resulted in the unnecessary multiplication of proceedings.  This statute provides:

**§1927. Counsel's liability for excessive costs**

---

[69]*Id (citing* Fed. R. Civ. P. 26 advisory committee note to 1983 amendment).

[70]  *Id.* at 551 (citation omitted).

[71]*Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D. New Hampshire 1998) (punctuation altered, citations omitted).

[72]*Lobato v. Ford*, 2007 WL 2593485 at *5.  (D. Colo.).

[73]*Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 552 (S.D. Ia. 2007).

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

This statute requires attorneys "to personally reimburse costs and fees incurred by an opposing party when counsel's conduct multiplies the proceedings in an improper way."[74] Because the statute is penal in nature, it should be strictly construed to avoid dampening the "legitimate zeal of an attorney in representing his client."[75] Losing arguments are not automatically sanctionable. The conduct, viewed objectively, must manifest either intentional or reckless disregard of the attorney's duty to the court.[76] To impose sanctions under § 1927, it is not necessary to find the attorney acted in bad faith; but neither is counsel permitted to blind himself to the realities of his case. In other words, an attorney acts vexatiously to multiply the proceedings under § 1927 if he acts with an "empty head and pure heart."[77] The Court must make factual findings of misconduct and provide an explanation for any sanction imposed to allow any reviewing court to ensure the sanction is appropriate.[78]

### 4. The Court's Inherent Authority

Inherent powers of the Court must be exercised with great caution, restraint and discretion.[79]

> Courts . . . are universally acknowledged to be vested . . . with power to impose silence, respect and decorum in their presence and submission to their lawful mandates. This power–founded not in a rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

---

[74] *Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 543 (S.D. Ia. 2007) (citation omitted).

[75] *Id.* (citation omitted)

[76] *Id.*

[77] *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008).

[78] *Id.* at 1204.

[79] *Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 553 (S.D. Ia. 2007).

> expeditious disposition of cases–extends to control admission to its bar and to
> discipline attorneys who appear before it.[80]

If the Court finds a litigant has manufactured evidence and/or that perjured testimony has been

introduced in an effort to enhance the case through fraudulent conduct, dismissal is an appropriate

sanction.[81]   "When a litigant's conduct abuses the judicial process, the Supreme Court has

recognized dismissal of a lawsuit to be a remedy within the inherent power of the court."[82]   The

Court also possesses inherent authority to impose monetary sanctions if it finds a party has abused

the judicial process.[83]   A Court that  chooses to impose sanctions using its inherent powers  may

choose from a menu of sanctions available under its inherent powers, ranging from the most drastic

(dismissing the entire case)  to an intermediate remedy (excluding  evidence) to the least severe

(assessing  costs and fees).[84]


### B.    Sanctions Are Imposed Against Christenson and Entwisle Pursuant to Rule 26(g) and the Court's Inherent Authority

After careful consideration of all the testimony and evidence,  sanctions must be imposed.

During the November 1 evidentiary hearing, the parties agreed that EX 1 is not the version of BTB

0434, 0435 and 0436 that was delivered by the defense to Christenson's office.  Sometime between

delivery of the Rule 26 Initial Disclosures on September 30, 2010 and October 20, 2010, someone

substituted the fake version in the box of discovery materials delivered to Christenson's office.  It

has not been proved to a certainty who created the fake emails or who made the switch.


The evidence presented indicates the persons who had access to the box of Rule 26 Initial

---

[80]*Id.* (citation omitted)

[81] *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992).

[82]*Id. citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.3d 27 (1991).

[83] *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993).

[84]*Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 553 (S.D. Ia. 2007).

16

Disclosures after it was delivered to Christenson's office were: Christenson,[85] Entwisle and Stewart. Entwisle and Stewart copied all of the Disclosures, including the fake version of the emails, and provided them to a third party (Stan Schoenbach) for an unrelated purpose benefitting Entwisle. It was represented to Schoenbach that the fake emails had been produced in BTB's Initial Disclosures in this litigation. The fake emails were not brought to the attention of defense counsel until they had already been successfully used to undermine the claims of Schoenbach's adversary in another lawsuit pending in New York. Bratkiewicz immediately disputed the authenticity of the emails, but by then it was too late for the person against whom they had been used (Waite) in the New York litigation.

That Bratkiewicz, Dafnos and Waite disputed the authenticity of the emails presented a perplexing problem for Christenson because, although he is ruled out as the author of the fake emails, his client sent them to the third party in New York and implicitly represented them as: (1) authentic and; (2) having been produced by BTB in this case when in reality; (3) they were neither.

By April 14, 2011, the following had occurred:

- Bratkiewicz immediately denied the authenticity of the fake emails when Christenson faxed copies to him on March 11, 2011.

- Bratkiewicz gave Christenson copies of the authentic versions of BTB 0434, 0435 and 0436 on March 11, 2011.

- Bratkiewicz supplemented BTBs' Rule 26 Initial Disclosures on March 18, 2011 with a CD of the PDF version of documents which had been produced in his office and delivered to Christenson on September 30, 2010. In the Supplemental Initial Disclosures, Bratkiewicz explained that the PDF version of the documents were all created on September 28, 2010.

- On March 31, 2011, the parties deposed Wesley Waite. Mr. Waite denied sending or receiving the fake emails. Waite denied the events described in the emails ever occurred.

- On April 1, 2011, Christenson served a Request for Admissions which requested BTB

---

[85]Christenson is ruled out as the author of the fake emails. Stewart explained that Christenson had little or no knowledge of the "players" mentioned in the emails and needed Stewart to draw a chart to explain for him to who they were and how they were connected. For this reason, Christenson could not have written the fake emails which contained detailed discussions and plans including references to names of businesses and persons about which Christenson knew little or nothing.

Technologies to admit the fake emails were authentic. Dafnos, on behalf of BTB, denied the emails were authentic, denied he wrote or received the emails, denied the emails were among the documents produced as part of Defendants' Rule 26 Initial Disclosures, and denied the events described in the emails ever occurred.

Despite knowing that Bratkiewicz and the purported sender and receiver of the fake emails (Dafnos and Waite) all denied their authenticity under oath, on April 14, 2011, Christenson supplemented the Plaintiff's Rule 26 Initial Disclosures to use the fake emails as part of the record in this case, if not as evidence. There was no purpose to serve by placing the fake emails into the record if not to enhance the Plaintiff's position in this lawsuit.

Because it cannot be determined with certainty who fabricated the emails, Plaintiff's case is not recommended for dismissal at this time. If it could be determined with reasonable certainty who fabricated the emails, dismissal would be recommended in a "New York Minute." Fabrication of evidence has been referred to as "the most egregious misconduct" which justifies a finding of fraud upon the Court.[86] Deliberate use of fake evidence undermines the integrity of the American system of justice and is not to be tolerated. Dismissal would unquestionably be warranted if it could be determined with reasonable certainty that Entwisle fabricated the emails, or that she was complicit in their fabrication.

"Unlike Rule 11 sanctions, which are awarded at a court's discretion, Rule 26(g) requires sanctions if a violation is found."[87] The mandatory nature of the Rule 26(g) sanctions is a deterrent to excessive discovery and evasion by imposing upon attorneys a certification requirement that requires each of them to "stop and think about the legitimacy" of the discovery documents upon which they affix their signatures.[88] "The most obvious situation where sanctions are appropriate occurs where a party or its attorney submits a false discovery document."[89]

---

[86]*Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976).

[87]*Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 550 (S.D. Ia. 2007).

[88]*Id. (citing* Fed. R. Civ. P. 26 advisory committee note to 1983 amendment).

[89]*Id.* at 551.

18

The duty imposed by Rule 26(g) is one of reasonable inquiry. Both the inquiry and the conclusions drawn therefrom must be reasonable.[90]   Sanctions are appropriate under Rule 26(g) when the parties' conduct has "clearly added unnecessary delay and expense to the litigation."[91]

Regardless of their origin, by April 14, 2011, both Christenson and Entwisle knew or their reasonable inquiry should have revealed Plaintiff's Supplemental Rule 26 Disclosures consisted of fake documents. By formally supplementing the Plaintiff's Rule 26 Disclosures to include the fake emails, Entwisle, through her lawyer Christenson "clearly added unnecessary delay and expense to the litigation."[92]

Therefore, IT IS ORDERED:

(1)   Pursuant to the Court's inherent authority  and the mandatory provisions of Rule 26(g), Defendants' Motion for Sanctions (Doc. 39) is GRANTED as follows:

    (a)   The version of BTB 0434, 0435 and 0436 as found in EX 1 is deemed fraudulent and fabricated.  It will not be allowed into evidence to prove the truth of any of Plaintiff's claims should this case proceed to trial;

    (b)   Mr. Christenson and Kasey Entwisle are jointly liable for Defendants' attorney's fees and expenses related to the issue underlying Defendants' Motion for Sanctions   incurred from April 14, 2011 until the date of this Order.

    (c)   Mr. Bratkiewicz shall submit appropriate documentation to the Court on or before January 17, 2012. An appropriate Order will follow.

(2)   Defendants' Motion for Leave to Submit Additional Affidavit (Doc. 66) is GRANTED;

---

[90]*See* Advisory Committee Notes to the 1983 amendments to Rule 26(g).  *Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D. New Hampshire 1998) .

[91]  *Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 552 (S.D. Ia. 2007).

[92]*Books Are Fun, LTD v. Rosebrough*, 239 F.R.D. 532, 552 (S.D. Ia. 2007).

(3)     A Motion to Stay was previously granted pending resolution of the Motion for Sanctions (Doc. 73). The stay is no longer necessary. The parties should request the District Court to enter a new Scheduling Order.

(4)     The Motion to Amend (Doc. 57) will be addressed in a separate Order.

Dated this  29th  day of December, 2011

                    BY THE COURT

                    John Simko
                    _____
                    John E. Simko
                    United States Magistrate Judge

20