UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| INTERPRETER SERVICES, INC., | * | CIV. 10-4007 |
| | * | |
| Plaintiff, | * | |
| | * | ORDER |
| v. | * | (Motion to Reconsider, Doc. 97) |
| | * | (Application for Fees, Doc. 96) |
| BTB TECHNOLOGIES, INC., and | * | |
| THOMAS M. DAFNOS, Individually, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending are: BTB's Application and Affidavit for Attorney's Fees (Doc. 96) and Interpreter Services' Motion to Reconsider (Doc. 97) the Court's decision to award attorney's fees to BTB. Interpreter Services has filed a Memorandum (Doc. 98) in support of its Motion; the Affidavit of Robert Christenson (Doc. 99); and a Reply Brief (Doc. 102). BTB has filed a Brief in Response to Interpreter Services Motion to Reconsider (Doc. 100); and the Affidavit of Jeff Bratkiewicz (Doc. 101).

## BACKGROUND

On December 29, 2011, the undersigned entered an Order which:

(1) Granted BTB's Motion for Sanctions (Doc. 39) under Federal Rule of Civil Procedure 26(g);

(2) Determined that the version of Bates pages 0434, 0435, and 0436 as found in EX 1 is fake; and;

(3) Directed BTB to submit appropriate attorney fee documentation on or before January 17, 2012.[1]

---

[1] Doc. 95, p. 19.

On January 11, 2012, BTB submitted its affidavit and application for attorney's fees in the amount of $21,378.89.  On January 27, 2012, Interpreter Services filed a Motion to Reconsider.  In the alternative, Interpreter Services requests to reopen the hearing so that additional evidence can be considered.  Interpreter Services does not challenge any of the attorney's fees or expenses submitted by BTB.

## BACKGROUND

Interpreter Services does not cite the Federal Rule of Civil Procedure or the Local Rule under which it moves for reconsideration of the Court's December 29, 2011 Order.  District of South Dakota Civil Local Rule of Practice 7.1 (B) provides in part, "the movant shall serve . . . a brief containing the specific points of law with the authorities in support thereof on which the movant relies, including the Federal Rule of Civil Procedure on the basis of which the motion is made."  Interpreter Services' failure to cite authority has caused some confusion;  neither party appears to know whether the pending  Motion  should be addressed to the undersigned or to Judge Schreier.

Although litigants often make them, the Eighth Circuit has noted that the Federal Rules of Civil Procedure do not mention  a "motion to reconsider." *Schoffstall v. Henderson*, 223 F.3d 818, 827 (8th Cir. 2000) (noting that Rule 59 applies when such a motion is made regarding a final order); *Miller v. Kansas*, 2010 WL 497651 (D. Kansas) (noting the Federal Rules do not recognize a "motion to reconsider" but that the District of Kansas Local Rules contain a provision for a "motion to reconsider" which allows a party to request a judge or magistrate judge to reconsider *an order made by that judge or magistrate judge*) (emphasis added).

When, as in this case, a party files a "motion to reconsider" a magistrate judge's non-dispositive order[2]  but does so after the fourteen day time limit for objections in Fed. R. Civ. P. 72

---

[2]For the first time in its reply brief (Doc. 102) Interpreter Services asserts BTB's Motion for Sanctions was really a dispositive Motion to Dismiss.  As such, Interpreter Services opines the undersigned Magistrate Judge was required to issue a Report and Recommendation pursuant to 28 U.S.C. § 636(B). That dismissal of the case was a possible sanction which could have been imposed, however, does not transform a motion for sanctions into a motion to dismiss.  It is noted that Judge

has expired, the magistrate judge may grant or deny the "motion to reconsider." If the parties are aggrieved by the magistrate judge's grant or denial of the "motion to reconsider" they follow the provisions of Fed. R. Civ. P. 72 to obtain review of the magistrate judge's grant or denial of the "motion to reconsider." *See e.g. Hohe v. Knowledge Learning Center Corp.*, 2011 WL 1466490 (D. Kansas); *see also Daley v. Mariott Intl., Inc.* 415 F.3d 889, fn. 9 (explaining procedure for challenging merits of magistrate judge's order on non-dispositive pretrial motions).

The undersigned entered its Order granting BTB's Motion for Sanctions on December 29, 2011. Pursuant to Fed. R. Civ. P. 72(a), if Interpreter Services desired a review by the District Court, it was **required** to file objections to the Order within fourteen days of December 29, 2011.[3] Because Interpreter Services did not do so, the "motion to reconsider" is viewed as just that–a motion to reconsider by the Judge who entered the Order. *Hohe v. Knowledge Learning Center Corp.*, 2011 WL 1466490 (D. Kansas).

## DISCUSSION

A motion to reconsider is "an extreme remedy to be granted in rare circumstances." *Hohe v. Knowledge Learning Corp.*, 2011 WL 1466490 (D. Kansas). "A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or

---

Schreier's Order (Doc. 72) referring the Motion for Sanctions to the undersigned referred the Motion for a ruling not a report and recommendation. Further, "Magistrate Judges have the power to award attorney fees as non-dispositive discovery sanctions under 28 U.S.C. § 636." *Hutchison v. Pfeil*, 201 F.3d 448 (10th Cir. 1999). "To the extent a sanction *imposed* is case dispositive . . . *then* the sanction would be dispositive . . ." *Montgomery v. Etreppid Technologies, LLC.* 2010 WL 1416771, * 12, fn. 4. (D. Nev.) (emphasis added). *See also Gomez v. Martin Marietta Corp.* 50 F.3d 1511, 1520 (10th Cir. 1995) ("The penalty . . . imposed, rather than the penalty sought by the movant, controls the scope of the magistrate's authority. Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b)."). Because the motion was for sanctions, and the sanction imposed (attorney's fees) was non-dispositive, an order rather than a report and recommendation was appropriate pursuant to 28 U.S.C. § 636 (A).

[3]Rule 72(a) states in relevant part: "A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider **timely** objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." (Emphasis added).

applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Schrag v. Dinges*, 144 F.R.D. 121, 123 (D. Kansas 1992).

Imprudent motions to reconsider "waste judicial resources and obstruct the efficient administration of justice." *Id.* "A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Id.* Likewise, although motions to reconsider "serve a valuable but limited function . . . they do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation." *Equal Employment Opportunity Commn. v. Jack Marshall Foods, Inc.*, 2010 WL 55635 at *2-3 (S.D. Ala.). It is with this understanding of the limited purpose to be served that Interpreter Services' Motion to Reconsider, along with the accompanying documentation, has been carefully reviewed.

Interpreter Services' Brief (Doc. 100) and Christenson's Affidavit (Doc. 99) offer three reasons the Court should reconsider its December 29, 2011 Order granting BTB's Motion for Sanctions: (1) Christenson does not and did not concede that the version of the emails with which Interpreter Services supplemented its Rule 26 disclosures was in fact "fake"; (2) the emails were added to the record not for the purpose advancing Interpreter Services' position in this litigation or threatened additional litigation, but out of a duty to bring them to the Court's attention; and (3) Judges Cott and Berman were not persuaded to set aside the settlement agreement the New York litigation (*Waite v. Shoenbach, et. al.* 10 Civ. 3439 (S.D.N.Y.)). In the New York litigation, Mr. Waite based his motion to set aside the settlement agreement upon his claim that the defendants in that case (Shoenbach and Lifelinks) fraudulently misrepresented the authenticity of the emails.

For the reasons more fully explained below, these reasons do not suffice to reconsider the Court's December 29, 2011 Order.

1.     **Interpreter Services' Assertion the Version of BTB 0434, 0435 and 0436 as found in EX 1 is Not Fake, or May Be Authentic**

Interpreter Services asserts that "as of the date it supplemented its Rule 26 disclosures with the fake emails, "there had been no factual or expert evidence present in either the New York case or the South Dakota case that the March 18 email was fake." Doc. 98, p. 6. Interpreter Services submitted the Affidavit of Robert Christenson which explains that its expert (Oliphant) "could not declare that the March 18 email was fake." Doc. 99 at ¶ 38. Interpreter Services did not present Mr. Oliphant's testimony at either of the two hearings which were held to determine which version of BTB 0434, 0435 and 0436 was the authentic one. "A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Schrag v. Dinges*, 144 F.R.D. 121, 123 (D. Kansas, 1992). Likewise, although motions to reconsider "serve a valuable but limited function . . . they do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation." *Equal Employment Opportunity Commn. v. Jack Marshall Foods, Inc.*, 2010 WL 55635 at *2-3 (S.D. Ala.). The hearsay opinion of Mr. Oliphant, therefore, is insufficient reason to reconsider the Court's conclusion about the authenticity of the version of BTB 0434, 0435 and 0436 found in EX 1.

Christenson's Affidavit also indicates "it is Christenson's position that at no time during the November 1, 2011 hearing did Christenson stipulate that Exhibit 1 was fabricated or 'fake.' Christenson finally believes that Exhibit 1 did not come from Bratkiewicz's office. Christenson stipulated to this fact after finally receiving a copy of April Crandall's affidavit on November 1, 2011." Doc. 99 at ¶ 41.

The reasons for the Court's conclusion that the version of BTB 0434, 0435 and 0436 as found in EX 1 is fake are thoroughly discussed in the December 29 Order and will not be repeated here. The on-the-record exchanges between the Court and counsel regarding the two versions of the emails are reproduced below:

Counsel first acknowledged that both versions could not be genuine during a status conference on September 15, 2011:[4]

> THE COURT: I understand that. What I'm suggesting to you is this, and I want to make sure you and Jim both understand it. Documents 0434, 435, and 436, one version is a completely innocent version.
>
> MR. CHRISTENSON: Yes.
>
> THE COURT: The other version of those very same pages, 0434, 0435, and 0436, describes what the parties have called corporate espionage.
>
> MR. CHRISTENSON: Yes.
>
> THE COURT: Now, those two versions of the very same pages are inconsistent with each other. One version is probably a genuine document, and the other version is probably a fabricated version. Do you agree with that, Bob?
>
> MR. CHRISTENSON: Yes.
>
> THE COURT: That was my question, to begin with. So everybody agrees one version or the other has to be fabricated. I'm expecting evidence at this hearing from both sides ruling themselves out.

The second acknowledgment occurred during the hearing on November 1, 2011:[5]

> THE COURT: I'm going to give each of you a chance to make any closing comments you want to make. Before doing that, I would like to refer to the Order that I issued, the five-paragraph order. In Paragraph 2, the central purpose for this hearing is to determine which version of Bates stamped Pages 0434, 0435, 0436 is authentic and which is not. It's my understanding we are in agreement that the version of those pages which has been marked as Exhibit 101 is the authentic version. Does the Plaintiff agree with my conclusion?
>
> MR. CHRISTENSON: Yes, Your Honor.
>
> MR. TAYLOR: We do.
>
> THE COURT: Does the defense agree with my conclusion?

---

[4] Doc. 88, p. 14, Line 8 through p. 15, Line 1.

[5] Doc. 81, p. 68, Line 11 through Line 25.

    MR. BRATKIEWICZ: Yes, Your Honor.

And the second acknowledgment was confirmed again during the November 1, 2011, hearing:[6]

> THE COURT: Finally, it's my understanding that it goes without saying that because Exhibit 101 reflects the authentic version of Bates stamped Pages 0434, 0435, and 0436, that Exhibit 1 reflects the manufactured version of those pages. Counsel for the Plaintiff, do you wish to dispute that conclusion?
>
> MR. TAYLOR: No, sir.
>
> MR. CHRISTENSON: No.
>
> THE COURT: Counsel for the defense, do you wish to dispute that conclusion?
>
> MR. BRATKIEWICZ: No, Your Honor.

Admissions made by counsel are binding upon their clients. *Martinez v. Bally's Louisina, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *Ferroline Corp. v. General Aniline & Film Corp.*, 207 F.2d 912, 916-17 (7th Cir. 1953) ("true it is that admissions of fact by counsel . . .are binding on the party whom he represents."). Despite the repeated admissions cited above, in its Brief Interpreter Services asserts:[7]

> The court's November 4, 2011 Order also states that during the hearing the parties agreed with the court's conclusion the exhibit 101 is the authentic version and Exhibit 1 is the fabricated version. It is Christenson (sic) position that *at no time during the November 1, 2011 hearing did Christenson stipulate that Exhibit 1 was fabricated or fake.*

Interpreter Services had two chances to present evidence that the version of BTB 0434, 0435 and 0436 contained in EX 1 is authentic; the hearing which was held on November 1, 2011 and the second hearing which was held on December 8, 2011. For reasons known only to it, Interpreter Services did not call its expert and presented little or no evidence during either hearing to suggest

---

    [6]Doc. 81, p. 78, Line 7 through Line 17.

    [7]Doc. 98, p. 9 (quotation marks omitted) (emphasis added).

7

that EX 1 is not fabricated or that it is authentic. Instead, during the first hearing, Interpreter Services conceded EX 1 contains the manufactured version. Interpreter Services did not change its position during the second hearing. Interpreter Services will not now be heard on a Motion to Reconsider to claim that EX 1 is not "fake" and/or may in fact be authentic.

> 2. **Interpreter Services' Assertion that Sanctions Should Not Be Imposed Because It Had A Duty to Bring the Emails to the Court's Attention**

Next, Interpreter Services asserts sanctions should not be imposed against it because it supplemented its Rule 26 Disclosures on April 14, 2011 to include the fake version of BTB 0434, 0435 and 0436 pursuant to the "duty" imposed by Fed. R. Civ. P.26(E) which states:

> (E) *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

Interpreter Services' assertion that it supplemented its Rule 26 disclosures based upon its perceived duty to the Court rather than based upon its threat to use the emails to its tactical advantage, either in this litigation or in threatened future litigation, is rejected for a couple of reasons. First, Interpreter Services presents this assertion for the first time in its Motion to Reconsider. "A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Schrag v. Dinges*, 144 F.R.D. 121, 123 (D. Kansas 1992). Second, the assertion that Interpreter Services supplemented its Rule 26 Disclosures out of a perceived duty to the Court rather than to gain a tactical litigation advantage is not supported by the record. The following excerpts from Christenson's communications to Bratkiewicz about the disputed emails are especially enlightening:

> There is one matter we need to address at this point. *This may be an entirely new lawsuit or part of the existing lawsuit*. I thought I would get your input.

> I have *enclosed copies of three (3) emails you provided in your initial discovery* to us. As you can see, the emails candidly describe the course Mr. Dafnos, in his capacity as president of URrelay, Inc., and Mr. Waite in his capacity as chief operating officer of LifeLinks, were on to 'discredit' Lamar and Kasey. In the March 18, 2010 email (sent at 17:06:54) Mr. Dafnos talks about discrediting Lamar and

8

> Kasey and goes on to state in the last paragraph that *'Our attorney will discredit Lamar and drop hints of his criminal background and do enough to frighten Kasey.'*
>
> One (1) week later, March 25, 2010, you sent an email to me stating in paragraph two (2) that Lamar, James, Lauren Stewart, John Kim, and a 'few others,' were participating in 'fraudulent activities,' and in paragraph seven (7), you strongly imply that James allegedly generated 80% of the ACE VRS voice and text minutes. You go on to state that 'Then again, I'm guessing that it was (what) they were hired to do.' Again you clearly imply that Lamar and the others were not only making fraudulent calls but were 'hired' to do so.
>
> My question to you is this: *Were you the attorney Mr. Dafnos was referring to in his March 18, 2010 email?*
>
> Kasey (Affluent Solutions) entered into a deal with LifeLinks in October, 2009; at the time BTB was not paying out on their contract with Kasey (Interpreter Services). The emails you provided in discovery were generated in March, 2010. Stan Schoenbach, president of LifeLinks terminated its contract with Kasey in June, 2010 based on, among other things, the reckless statements of Mr. Dafnos and Mr. Waite. Mr. Schoenbach subsequently renewed his company's business relationship with Kasey in November, 2010. At the time of the renewal, Mr. Schoenbach stated that the June, 2010 contract termination was in 'error.' It is my thinking at this time that Mr. Dafnos' role in this matter, both personally and as an agent of URrelay *should be addressed in a separate lawsuit. The firm of Taylor and Miskimins, Mitchell, South Dakota has been retained to handle this matter. We certainly could stipulate to have this latest mater litigated in our existing lawsuit. What are our thoughts? We would name Mr. Waite as a defendant as well.*[8]

When Bratkiewicz immediately disputed the authenticity of the version of BTB 0434, 0435 and 0436 which accompanied the above correspondence from Christenson and provided Christenson with copies of the version of those documents which had been provided by Bratkiewicz's office, Christenson theorized that "you or your staff mistakenly placed the three (3) emails in the discovery you provided and are now scrabbling to correct the mistake–if it was a mistake."[9] Christenson immediately proposed "[p]erhaps this will solve our problem: I will agree to place your documents in the discovery materials and take mine out. I will then submit my emails to you as supplemental

---

[8]*See* Doc. 42-4, p. 1-2 (emphasis added).

[9]*See* Doc. 42-4, p. 7, 9 & 12.

discovery. That would solve our problem without further conflict."[10] Finally, Christenson's April 11, 2011 letter to Bratkiewicz is enlightening:

> Thank you for your recent letter. I have no idea why you are claiming that your correspondence to me 'should be treated as privileged and confidential.' It clearly is not privileged nor confidential and will not be treated that way by my office.
>
> I understand that you deny the emails were not provided by your office. My position is that the emails were provided by your office.
>
> I understand that Dafnos and Waite deny making the emails.
>
> I also believe that you continue to 'miss the mark.' The question is not whether or not the mails are genuine or not. Rather, the question is whether or not the emails were provided by your office. As I have suggested to you on previous occasions, I am wiling to agree that the emails you claim you provided be placed in the discovery material. Correspondly, I will submit the emails you claim were not provided, as supplemental discovery. This would solve the initial problem. Thereafter, if I wish to use the questioned emails, I will have to lay proper foundation. If I cannot do that, obviously, the emails cannot be used at trial.
>
> Either way, I believe we need to get Judge Schrier involved. Your continued 'menacing' demands directed at me are a concern to me.[11]

Three days after the above-cited correspondence (which confirmed Interpreter Services' initial intent to use the disputed emails for a tactical litigation advantage), Interpreter Services supplemented its Rule 26 disclosures to include the fake emails. Interpreter Services did not note within the supplemental disclosure that authenticity of the emails was disputed, nor did it request a ruling by the Court to resolve the dispute. Interpreter Services' current assertion, therefore, that it supplemented the Rule 26 disclosures with the fake emails out of a duty to the Court instead of its previously stated intent to use them for a tactical advantage against Dafnos and/or BTB is rejected. Interpreter Services will not now be heard on a Motion to Reconsider to claim that sanctions should

---

[10] *See* Doc. 42-4, p. 7. By the date of this correspondence (March 15, 2011) Kasey Entwisle had *already* provided the fake emails to the New York litigants, who had *already* used them in a settlement conference and had represented that the emails had *already* been produced in Rule 26 initial disclosures in this litigation.

[11] *See* Doc. 42-4, p. 36 (errors in original).

10

not be imposed because it supplemented its Rule 26 disclosures because of a perceived duty to disclose the fake emails.

### 3. Interpreter Services Assertion that Sanctions Should Not Be Imposed Because the Settlement Was Not Set Aside in the New York Litigation

Finally, Interpreter Services asserts that sanctions should not be imposed because Judges Cott and Berman refused to set aside the settlement agreement in *Waite v. Shoenbach, et. al.*, 10 cv. 3439 (S.D.N.Y.). This assertion is likewise rejected.

Before Interpreter Service supplemented its Rule 26 disclosures to include the fake emails, Wesley Waite settled his New York lawsuit based in part on the production of the fake emails during a settlement conference. Waite eventually moved to set aside the settlement agreement after the facts surrounding the fake emails came to light. Both Waite and Dafnos (the purported parties to the fake emails) were deposed, and both denied sending or receiving the fake emails. Interpreter Services attached copies of both Judge Cott and Judge Berman's decisions to Christenson's Affidavit (*See* Doc. 99-3; Judge Cott's decision; Doc. 99-12; Judge Berman's decision). Judge Cott's decision is dated August 5, 2011; Judge Berman's decision is dated December 16, 2011. The undersigned did not enter the Order granting sanctions until December 29, 2011. In other words, that the New York judges refused to set aside the settlement agreement despite the claim that the emails were fake was information which was available to Interpreter Services before the Order granting sanctions was entered. "A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Schrag v. Dinges*, 144 F.R.D. 121, 123 (D. Kansas 1992).

More importantly, the inquiry in the New York case (whether the settlement should be set aside because it was based in part on reliance on fake evidence) is entirely different from the inquiry in this case (whether sanctions should be imposed under Rule 26(g)(3) for supplementing Rule 26 disclosures with fake evidence). *See* Judge Cott's decision dated August 5, 2011 (explaining Waite "knowing the authenticity of the email was uncertain, of his own accord, chose to settle rather than investigate the email's authenticity. In doing so, [Waite] gave up his opportunity to further question

the authenticity of the email.")(citation omitted). For these reasons, Interpreter Services will not now be heard on a Motion to Reconsider to claim that sanctions should not be imposed because the settlement was not set aside in the New York case.

### 4. BTB's Application for Attorney's Fees and Expenses

The Court has reviewed BTB's Application for Attorney's Fees and Expenses (Doc. 96). BTB requests fees and expenses in the amount of $21,378.89. The fees and expenses will be awarded with the exception of $944.48; the following expenses will not be allowed: The attorney's fees for Reed Rasmussen ($318.00) will not be allowed. Mr. Rasmussen observed the December 8, 2011 hearing but did not participate and is not an attorney of record in this case. The expenses incurred by Ben Dudley and Bill McClelland to attend the November 1, 2011 hearing ($626.48 total) will not be allowed. While Dudley and McClelland's interest in the hearing is understandable, their attendance was not necessary. They provided no testimony and Judge Schreier dismissed them from the lawsuit on July 1, 2010 (Doc. 30). Pursuant to the Court's Order dated December 29, 2011 (Doc. 95) fees and expenses are awarded to BTB in the amount of $20,434.41.

### CONCLUSION and ORDER

For the reasons more fully explained above, it is ORDERED:

(1) Interpreter Services' Motion to Reconsider (Doc. 97) is DENIED;

(2) BTB's Application for Attorney's Fees and Expenses (Doc. 96) is GRANTED in the amount of $20,434.41.

Dated this 22nd day of March, 2012.

BY THE COURT:

*s/John E. Simko*

_____
John E. Simko
United States Magistrate Judge