UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| INTERPRETER SERVICES, INC., | ) | CIV. 10-4007-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| BTB TECHNOLOGIES, INC. and | ) | |
| THOMAS M. DAFNOS, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Interpreter Services, Inc., filed an amended complaint alleging one claim of misrepresentation against defendants, BTB Technologies, Inc. and Thomas M. Dafnos, individually. Docket 27. Defendants move for summary judgment and allege that Interpreter Services cannot establish a genuine dispute in material fact that Dafnos made any fraudulent representations that induced Interpreter Services to enter into a contract with BTB or that Dafnos had a special duty to disclose information that was material to the contract when the parties were dealing at arm's length. Docket 109. Interpreter Services resists the motion and asserts that based on the experience and interactions of the parties, Dafnos had a confidential or fiduciary relationship with Interpreter Services that required him to disclose information material to the contract. Docket 119.

Defendants also move to enforce a prior order awarding sanctions against Interpreter Services' owner and president, Kasey Entwisle, and Interpreter Services' attorney, Robert Christenson. Docket 126. Interpreter Services does not resist the motion, but instead moves to stay the court's order for sanctions pending appeal. Docket 129. Defendants oppose the motion to stay and claim it was improperly brought and is procedurally defective. Docket 131.

## BACKGROUND

The pertinent facts to this order, viewed in the light most favorable to the nonmoving party, Interpreter Services, are:

Interpreter Services, Inc. is a South Dakota corporation that provides American Sign Language interpretation services to the deaf and hard of hearing. Kasey Entwisle is the owner and president of Interpreter Services. BTB Technologies, Inc. was an Indiana corporation that provided technological software, support, and services to businesses involved in the telecommunications industry. One of those businesses was a company called Communications Access Center for the Deaf and Hard of Hearing (CAC). CAC is a private, nonprofit corporation based in Flint, Michigan, that offers services and programs to individuals with hearing disabilities.

In 2000, CAC began offering a type of service called Telecommunications Relay Service or TRS. TRS allows people with hearing and speech disabilities to place and receive telephone calls or to communicate with both hearing persons

and people who may have a hearing or speech disability. CAC eventually expanded its programing and began to provide a service called Video Relay Services (VRS). VRS involves the use of sign language interpreters as intermediaries to allow individuals to communicate with each other over the internet or through a video phone. Certified providers of VRS, like CAC, are reimbursed for their services from a fund created by the Federal Communications Commission (FCC), which is the regulating body of the industry that provides communication services to the deaf or hard of hearing.

In 2007, Entwisle wanted Interpreter Services to enter the VRS market. She contacted CAC to inquire about Interpreter Services working as a VRS interpreter call center for CAC, but CAC was not interested at the time. Through her contacts with CAC, Entwisle met Dafnos, who was the CEO and president of BTB. BTB and its partner, URRelay, provided the software, services, support, and other technological expertise to connect CAC with business partners and other call centers in the United States. The network used by BTB and URRelay routed communications to call centers to process and respond to the communications. This platform also collected the call data and information necessary for CAC to be reimbursed by the FCC for its services.

Although CAC was not interested in partnering with Interpreter Services in 2007, CAC eventually contacted Entwisle about the possibility of opening a call center in Sioux Falls, South Dakota. CAC asked Dafnos to tour an

Interpreter Services' location to see if it would be an appropriate location for one of CAC's call centers. At the time, either BTB or URRelay was responsible for setting up new call centers for CAC's network to ensure that they met all technical or training requirements. Eventually, CAC and Interpreter Services began negotiating terms of a contract for services, but ultimately BTB became the party to the contract because CAC did not want to threaten an existing relationship with another nonprofit organization that offered the same type of services within the Sioux Falls, South Dakota, community.

The contract was called a "Professional Services Agreement" (PSA). The PSA was executed by Entwisle on behalf of Interpreter Services and by Dafnos on behalf of BTB Technologies. Both parties signed the PSA by November 9, 2008. Although some terms of the contract are disputed by the parties, it is undisputed that Interpreter Services supplied the location for the call center and the interpreters, who logged into CAC's network to process communications during the times and at the staffing levels requested by CAC. As a result, Interpreter Services was compensated at the rate of $1.30 per minute.

In November of 2009, Interpreter Services and defendants had a dispute about services and compensation provided under the contract. Specifically, the dispute related to the partial payment of two invoices from 2009. Interpreter Services then terminated the contract. Interpreter Services notified BTB that it would bring suit to recover damages for breach of contract. The parties began

negotiating a settlement. In December of 2009, during the negotiating process, BTB's attorney at the time informed Interpreter Services that BTB was insolvent and that it had not received income since March of 2009. BTB dissolved in early 2010. Interpreter Services brought a breach of contract cause of action in state court against BTB Technologies on the issue of the unpaid invoices. That case settled, and the state court action was dismissed with prejudice.

On January 28, 2010, Interpreter Services filed this federal cause of action and asserted that multiple defendants engaged in misrepresentation in the formation of the PSA. Docket 1. Defendants moved to dismiss the complaint, and the court dismissed URRelay, Inc., William McClelland, and Ben Dudley as defendants. The court concluded, however, that Interpreter Services had successfully pleaded a claim of fraud against BTB and Dafnos. Docket 30.

On May 16, 2011, defendants moved for sanctions against Interpreter Services because defendants alleged that Interpreter Services and its attorney, Robert Christenson, improperly included fabricated documents in its Rule 26 disclosures. Docket 39. This motion was referred to the magistrate judge. Following a hearing on the motion, the magistrate judge granted defendants' motion for sanctions against Entwisle and Christenson on December 29, 2011. Docket 95. The magistrate judge determined that sanctions were appropriate, but dismissal was not because it was unclear who had fabricated the emails.

5

After the order granting sanctions was issued, Interpreter Services moved the magistrate judge for reconsideration. Meanwhile, defendants moved for attorney's fees on the costs associated with preparing the motion for sanctions. Docket 96. The magistrate judge denied Interpreter Services' motion to reconsider and granted defendants' request for attorney's fees in the amount of $20,434.41. Docket 104 at 12. Interpreter Services objected to that order. Docket 105. On October 19, 2012, this court overruled Interpreter Services' objections to the magistrate judge's order denying reconsideration. Docket 107. The court determined that the magistrate judge's order was not clearly erroneous or contrary to law. The court also stated "that Entwisle and Christenson are to pay $20,434.41 to either Thomas Dafnos or to defendants' attorneys to be deposited into the firm's client trust account within 60 days of this order." Docket 107 at 16.

On November 20, 2012, defendants moved for summary judgment. On January 2, 2013, defendants moved to enforce the prior order of sanctions and to hold Entwisle and Christenson in contempt for failing to pay sanctions within 60 days of the court's order. Docket 126. Interpreter Services did not respond to this motion, but moved to stay the order granting sanctions pending appeal under Federal Rule of Appellate Procedure 8. Docket 129.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn

from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. Summary Judgment

Defendants contend that Interpreter Services has not brought forth evidence that Dafnos or an agent of BTB made any false representations during the formation of the PSA; therefore, Interpreter Services' claim of misrepresentation cannot survive summary judgment. In its response, Interpreter Services does not attempt to establish a genuine dispute as to fraudulent representations by Dafnos during the formation of the PSA. Instead, Interpreter Services claims that because Dafnos is the expert in the VRS industry upon whom Entwisle relied when making her decision to enter into the contract with BTB, Dafnos owed Interpreter Services a duty akin to that of a fiduciary or confidant. Defendants assert that there was no legal duty owed when Dafnos was on the other side of an arm's length transaction and Entwisle was an experienced businessperson in the interpreting community capable of protecting her company's interest.

Because this court is sitting in diversity, it will apply the substantive law of the forum state, South Dakota, when discussing Interpreter Services' claim of

misrepresentation.[1] The South Dakota Supreme Court has established the essential elements of fraud-related claims as follows:

> [T]hat a representation was made as a statement of fact, which was untrue and *known to be untrue by the party making it, or else recklessly made*; that it was made *with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he [or she] did in fact rely on it and was induced thereby to act to his [or her] injury or damage.

*Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d 399, 404 (S.D. 1998) (citations omitted). Specifically, fraudulent inducement during the formation of the contract "requires willful deceit and intent to induce another to alter his position." *Johnson v. Miller*, 818 N.W.2d 804, 808 (S.D. 2012) (quotations and citations omitted). " 'For a theory based upon fraud to succeed, it is not enough that one party intend to defraud another. It is also necessary that the fraudulent behavior induced the other party to act to its detriment.' " *Id.* (quoting *Fenske Media Corp. v. Banta Corp.*, 676 N.W.2d 390, 394 (S.D. 2004)).

In Entwisle's affidavit resisting summary judgment, she states that plaintiff's lawsuit is based on the allegations in the amended complaint that "all Defendants, named, either new (sic) or should have known that Defendant, BTB Technologies, Inc. was either insolvent or was soon to be insolvent in November, 2008, when Defendants, Dafnos and BTB Technologies, Inc. negotiated the

---

[1] *See Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001) ("A United States District Court sitting in diversity jurisdiction applies the substantive law of the forum state.").

9

Professional Services Agreement with Plaintiff, Interpreter Services, Inc." Docket 122 ¶ 37 (quoting Docket 27 ¶ 21). The specific representation that Interpreter Services alleges to be a fraudulent misrepresentation in its brief was that BTB "was a strong and vibrant company in the process of opening call centers all over the country." Docket 119 at 2.

Interpreter Services, however, has not identified any facts in the record to show that Dafnos or anyone from BTB ever made a statement to Interpreter Services prior to the contract being signed about the solvency of BTB, its financial condition, the future of the company, or any other related financial statement.[2] Without evidence that Dafnos made a statement that he knew to be false or recklessly made a statement of fact upon which Interpreter Services relied when forming the contract, Interpreter Services' claim of misrepresentation fails. *See Stene,* 583 N.W.2d 399 at 405 (concluding that fraud was not present when there was "no specific, material evidence showing that [plaintiff] was misled or falsely induced into purchasing insurance"). Thus, Interpreter Services did not carry its burden on summary judgment and point to

---

[2] The court could only find fleeting references to statements made by Dafnos to Entwisle relating to BTB's business or the contract in the record. In Entwisle's affidavit in support of Interpreter Services' opposition to the motion to dismiss, Entwisle notes an email that references Interpreter Services becoming "part of a national network," that defendants were "contemplat[ing] increasing the number of seats in your facility," and that Interpreter Services "will do prime time for now, but could do nights later." Docket 23 ¶ 11. These passing comments do not rise to the level of materially false representations, in particular, without more factual support from Interpreter Services.

a specific part of the record that establishes that a genuine dispute in material fact remains for trial. *See Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' ").

Moreover, Interpreter Services essentially abandoned this former theory of the case and took a new approach in its response brief where it now argues that Dafnos owed Interpreter Services a duty to disclose information material to the contract. Specifically, Interpreter Services claims that Dafnos, as an expert in the field of VRS, had a fiduciary or confidential relationship with Interpreter Services such that he had a duty to disclose that BTB's financials were unstable, to better explain CAC's involvement in the PSA, or to outline any inherent risk to entering the VRS industry. Although this theory is raised for the first time on summary judgment, the court will consider it on the merits because it also fails as a matter of law.

"While as a general rule, one party to a transaction has no duty to disclose material facts to the other, 'special circumstances' may dictate otherwise." *Buxcel v. First Fidelity Bank*, 601 N.W.2d 593, 596 (S.D. 1999) (citation omitted). A party must disclose material facts because of such a special circumstance if it is "[o]ne who stands in a confidential or fiduciary relation to the other party to a transaction[.]" *Id.* at 596-97. Confidential relationships are not restricted to a particular type or association of persons, but exists when

11

there is confidence and trust. *Id.* at 597 (citing *Brandriet v. Norwest Bank S.D.*, 499 N.W.2d 613, 617 (S.D. 1993)). The terms fiduciary relationship and confidential relationship are generally synonymous with each other. *Id.* (citation omitted). A fiduciary relationship can result from a "disparity of business experience and invited confidence[.]" *Id.* (quotations and citations omitted). " 'The existence of a fiduciary duty and the scope of that duty are questions of law.' " *Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 45 (S.D. 1999) (quoting *High Plains Genetics Research v. J K Mill-Iron Ranch,* 535 N.W.2d 839, 842 (S.D. 1995)).

In South Dakota, however, fiduciary duties are not found in typical arm's-length business dealings, but instead "arise only when one undertakes to act primarily for another's benefit." *Id.* at 47. The law will impose a fiduciary duty only "where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other." *Id.* There is not a firm rule that determines whether a fiduciary relationship exists, "but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, or mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other." *High Plains Genetics Research, Inc.,* 535 N.W.2d at 842 (quotation and citation omitted).

12

There is no dispute in material fact that when Dafnos was acting during the contract preparation and execution he was acting on behalf of BTB, the company to which he was CEO and president. Entwisle stated that she trusted Dafnos completely in forming the contract and its terms; however, she knew that Dafnos was an owner of BTB and knew that his participation in the negotiations was for the benefit of BTB. Dafnos never worked as a consultant or agent for Interpreter Services. This was an arm's-length transaction where Entwisle and Dafnos were on opposite sides and is not the type of relationship to which the law would apply a fiduciary relationship. *See Dinsmore*, 593 N.W.2d at 46 ("While a fiduciary relationship does exist between securities brokers and their clients, fiduciary duties are not owed when the parties are dealing at arm's length.").

Moreover, even though Entwisle argues that she placed her full trust in Dafnos, the court will not infer that Dafnos owed a legal duty when there is evidence that Entwisle was fully capable of protecting Interpreter Services' interests during negotiations of the contract. First, Entwisle had been running her own interpreting business prior to her relationship with Dafnos and long before the contract was created. Second, it is undisputed that Entwisle sought out the contract with CAC and approached CAC to get involved with VRS services in 2007. Next, Dafnos stated that Entwisle seemed knowledgeable about how to operate a VRS call center and that she understood she would be

13

dealing with CAC, BTB, and URRelay. Finally, Entwisle requested that the contract be altered during negotiations to add a provision that addressed interpreter certification. BTB made the change. This is sufficient evidence to establish that Entwisle showed business savvy and could protect Interpreter Services' interests when contracting.

Beyond Entwisle stating that she lacked experience or that she trusted Dafnos, Interpreter Services did not bring forth evidence of "a certain inequality, dependence, weakness of age, or mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other." *High Plains Genetics Research, Inc.*, 535 N.W.2d at 842. Moreover, Dafnos could have assumed that Entwisle would investigate the benefits and pitfalls of Interpreter Services' contract with BTB and would draw conclusions to protect herself and her business. *See Harding Cnty., S.D. v. Frithiof*, 575 F.3d 767, 763 (8th Cir. 2009) ("The defendant may reasonably expect the plaintiff to make [her] own investigation, draw [her] own conclusions and protect [her]self; and if the plaintiff is indolent, inexperienced or ignorant, or [her] judgment is bad, or [she] does not have access to adequate information, the defendant is under no obligation to make good [her] deficiencies.") (citations omitted). In sum, there is no support in the record to conclude that Entwisle and Dafnos' relationship was replete with special circumstances that would impose upon Dafnos a duty to disclose information material to the contract when the parties

14

were entering into an arm's-length transaction. Accordingly, defendants are entitled to summary judgment in their favor.

## II.   Motion to Enforce Court's Prior Order/Motion to Stay

The magistrate judge entered an order directing that sanctions of $20,434.41 be awarded to BTB and against Entwisle and her attorney, Christenson. This court directed that the sanctions be paid within 60 days of October 19, 2012. Because Entwisle and Christenson have yet to pay the sanctions, defendants move for an order holding Entwisle and Christenson in civil contempt for failing to comply with the court's order. Interpreter Services argues that the court's order granting sanctions should be stayed pending appeal.

It is a generally established principle that courts have an inherent power to punish parties for contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citation omitted). The court's power to hold a party in contempt or sanction them by incarceration or fine "extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Id.* at 507. The party that seeks the order of civil contempt "bears the initial burden of proving, by clear and convincing

evidence, that the alleged contemnors violated a court order." *Id.* at 505 (citation omitted). If the party can do so, the burden shifts to the alleged violator to show its inability to comply with the court's directive. *Id.* (citation omitted).

BTB has made a showing that Christenson and Entwisle did not pay the sanctions within 60 days of this court's October 19, 2012, order. There is no evidence that Entwisle or Christenson have attempted to pay any amount of the sanctions to defendants. There also is no evidence that Entwisle or Christenson have sufficiently explained their inability to pay. The only evidence in the record on the issue of payment of sanctions is a letter to the court from Entwisle. In the letter Entwisle informs the court that as of February 22, 2013, she had contacted her insurance company and she filed a claim under her medical professional liability policy. Docket 133. Entwisle stated that a claims specialist with her insurance company is investigating her claim and it would take another 30 to 60 days before her insurance provider would give an answer to whether it would cover the cost of sanctions under Entwisle's policy. Entwisle stated in the letter: "I do hope this is acceptable as I am doing everything I can to honor the sanctions ordered." Docket 133 at 1.

In the meantime, however, neither Entwisle nor Christenson has complied with the court's order. Even though Entwisle advised the court that she was attempting to invoke her insurance coverage to pay the cost of sanctions, she has not stated her own inability to comply with the court's order due to

financial circumstances or other hardships. Entwisle's blanket assertion that she is doing everything she can to comply with the court's order is not enough to show inability to comply. Additionally, Christenson has done nothing in response to the court's order for sanctions even though he is jointly liable for the sanctions awarded in this matter. And neither Christenson nor Entwisle asked the court for permission to post a bond or proposed an alternative method to comply with the court's order. Effectively, Entwisle and Christenson have ignored the court's order without explanation. Moreover, Entwisle and Christenson did not respond to BTB's motion to enforce the order for sanctions; thus, the court can deem their objection to the motion to be waived.

In light of the fact that summary judgment has now been entered in favor of defendants, however, the court declines to hold Entwisle and Christenson in civil contempt. Nothing would be gained by such a holding. A judgment will be entered against Entwisle and Christenson, and defendants may proceed forward with a collection action with respect to that judgment.

Interpreter Services argues that the court should stay the order granting sanctions pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C). Interpreter Services states that although it has not yet filed an appeal, an appeal pending the outcome of this litigation will be based on the cases of *Cooter & Gell v.*

*Hartmarx Corp.*, 496 U.S. 384, 405 (1990), and *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009).[3]

Interpreter Services' motion is procedurally deficient. Interpreter Services has not appealed any portion of this case to the Eighth Circuit Court of Appeals, so there is no appellate jurisdiction and Rule 8 of the Federal Rules of Appellate does not apply. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) ("Federal Rule of Appellate Procedure 8(a) governs the power of a *court of appeals* to stay an order of a district court pending appeal.") (emphasis added); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal.").

Additionally, even if Interpreter Services' motion to stay was properly brought, it has not addressed the four factors that the court considers when determining whether a motion to stay pending appeal is appropriate. *See Hilton*, 481 U.S. at 776 (analyzing "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where

---

[3] Interpreter Services does not explain the grounds upon which its appeal would be based, but identifies that these cases discuss the standard of review when reviewing an imposition of attorneys' fees and sanctions, a magistrate judge's partiality, and defense counsel's exaggeration of ancillary issues. Docket 130 at 1.

the public interest lies."). Because Interpreter Services has brought forth no evidence or argument to show that it is likely to succeed on the merits of its appeal, the court does not have to analyze the remaining three factors. Accordingly, Interpreter Services' motion for a stay pending appeal is denied.

## CONCLUSION

Summary judgment is granted in favor of defendants on Interpreter Services' misrepresentation claim because Interpreter Services did not bring forth evidence that creates a genuine dispute in material fact that defendants made a fraudulent representation prior to the formation of the contract and because the court concluded that Dafnos did not have a legal duty to disclose information material to the contract to Interpreter Services when the parties were dealing at arm's length. While Entwisle and Christenson are in violation of the court's order awarding sanctions and have failed to establish why they cannot comply with the order, the court will not hold them in civil contempt. Interpreter Services' motion to stay the award of sanctions pending appeal is denied because it is procedurally deficient. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 109) is granted.

IT IS FURTHER ORDERED that defendants' motion to enforce an order of sanctions (Docket 126) is denied.

IT IS FURTHER ORDERED that Interpreter Services' motion to stay (Docket 129) is denied.

Dated March 22, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE